IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LEON WOLT and wife,** § <br> **DEBRA WOLT** § <br>    *Plaintiffs* § <br> § <br> v. § <br> § <br> **EMBANKSCAPE EQUIPMENT, LLC,** § <br> **d/b/a RC MOWERS USA, KAR-TECH,** § <br> **INC., KAR-TECH GLOBAL, INC.,** § <br> **ARIENS COMPANY, d/b/a GRAVELY,** § <br>    *Defendants* § | CASE NO.  4:22-cv-2503 |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE COURT:**

    **COMES NOW** Plaintiffs LEON WOLT and wife, DEBRA WOLT, and file this their Original Complaint, complaining of and against Defendants EMBANKSCAPE EQUIPMENT, LLC, d/b/a RC MOWERS USA, KAR-TECH, INC. KAR-TECH GLOBAL, INC., and ARIENS COMPANY, d/b/a GRAVELY, and in support thereof would respectfully show this Honorable Court as follows:

### I.  PARTIES

    1.    Plaintiff LEON WOLT is a citizen of the State of Texas and is an individual who resides in Brazoria County, Texas.

    2.    Plaintiff DEBRA WOLT is a citizen of the State of Texas and is an individual who resides in Brazoria County, Texas.

    3.    Defendant EMBANKSCAPE EQUIPMENT, LLC, d/b/a RC MOWERS USA, is a limited liability company formed under the laws of the State of Wisconsin and whose members are residents of the State of Wisconsin, with a principal place of business located at 2146 Deerfield

Avenue E, Suamico, Wisconsin 54173-7945. Defendant may be served with process by serving its registered agent for service, Michael Brandt, 2146 Deerfield Avenue E, Suamico, Wisconsin, 54173-7945.

4. Defendant, KAR-TECH, INC., is a corporation formed under the laws of Wisconsin, with a principal place of business located at 111 Enterprise Road, Delafield, Wisconsin 53018-1705. Defendant may be served with process by serving its registered agent for service, Hassan Karbassi, 111 Enterprise Road, Delafield, Wisconsin 53018-1705.

5. Defendant, KAR-TECH GLOBAL, INC., is a corporation formed under the laws of the State of Wisconsin, with a principal place of business located at 111 Enterprise Road, Delafield, Wisconsin 53018-1705. Defendant may be served with process by serving its registered agent for service, Hassan Karbassi, 111 Enterprise Road, Delafield, Wisconsin 53018-1705.

6. Defendant, ARIENS COMPANY, d/b/a GRAVELY, is a corporation formed under the laws of the State of Wisconsin, with a principal place of business located at 655 W. Ryan Street, Brillion, Wisconsin 54110-1072. Defendant may be served with process by serving its registered agent for service in the State of Texas, Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas 78701.

## II.   JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendants, EMBANKSCAPE EQUIPMENT, LLC, d/b/a RC MOWERS USA, KAR-TECH, INC. KAR-TECH GLOBAL, INC., and, ARIENS COMPANY, because Defendants are business entities that regularly engage in business in the State of Texas, and have such continuous and systematic contacts with the State of Texas as to confer upon the court general personal jurisdiction to the full extent permitted by the Texas long-arm statute and the Due Process Clause of the United States Constitution. Defendants,

moreover, were conducting business in the State of Texas at the time this cause of action accrued, and Plaintiffs' claims arise out of said contacts.

8. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within that district.

### III. AGENCY/RESPONDEAT SUPERIOR

9. Whenever it is alleged in this Complaint that any Defendant did any act or thing, it is meant that the Defendant's agents, servants, employees, parent agents, ostensible agents, agents by estoppel and/or representatives did such act or thing, and at the time such act or thing was done it was done with the authorization of the Defendant or was done in the normal routine course of the agency or employment of the Defendant.

### IV. FACTS

10. Defendant EMBANKSCAPE EQUIPMENT, LLC, d/b/a RC MOWERS USA (hereinafter "RC MOWERS") was created in 2019 in the State of Wisconsin for the purpose of designing, manufacturing, marketing and selling remote controlled zero-turn mowers to dealers and end-consumers.

11. Following its creation, RC MOWERS designed, manufactured, marketed and sold the RC MOWERS Model TK-52XT remote controlled mower.

12. RC MOWERS' design of remote controlled zero-turn mowers relies upon manually operated zero-turn mowers manufactured by Defendant ARIENS COMPANY, d/b/a GRAVELY (hereinafter "GRAVELY").

13. Prior to the incident in question, RC MOWERS contacted GRAVELY to communicate its desire to purchase manually operated zero-turn mowers from GRAVELY to be used in the manufacture of RC MOWERS' remote controlled zero-turn mowers.

14. As a result of those communications, RC MOWERS purchased, and GRAVELY sold, manually operated zero-turn mowers from GRAVELY and, specifically the GRAVELY Pro-Turn 250 Series zero-turn mower for use in the manufacture of the RC MOWERS' model TK-52XT remote controlled mower,.

15. The zero-turn mowers manufactured and sold by GRAVELY and purchased by RC MOWERS are designed by GRAVELY to be operated by a driver seated on the mower.

16. The zero-turn mowers manufactured by GRAVELY utilize independently and manually operated handle bars connected to actuators which, in turn, control the movement of the mower, as well as manually operated parking brakes.

17. RC MOWERS removed the operator/driver seat, handle bars, and actuators on the GRAVELY Pro-Turn 250 Series zero-turn mowers.

18. RC MOWERS installed a remote controller and actuators designed and manufactured by RC MOWERS in the first generation model TK-52XT mower.

19. The RC MOWERS controller is used in conjunction with a transmitter designed, manufactured, marketed and sold by Defendants KAR-TECH, INC. and/or KAR-TECH GLOBAL, INC. (hereinafter referred to as "KAR-TECH").

20. With the seat, handle bars and existing actuators removed, and the controller with accompanying actuators installed, the transmitter is intended to allow an operator to control the operation and movement of the zero-turn mower remotely.

21. On August 13, 2020, Leon Wolt was employed by Kinloch Equipment & Supply in Pasadena, Texas.

22. Prior to that date, Kinloch Equipment & Supply had recently become a dealer of RC MOWERS remote controlled mowers.

23. RC MOWERS issued a service update, instructing Kinloch Equipment & Supply to remove the actuators designed and manufactured by RC MOWERS and to replace them with actuators designed and manufactured by KAR-TECH.

24. On August 12, 2020, Leon Wolt, in the course and scope of his employment with Kinloch Equipment & Supply, was provided with the RC MOWERS service update and removed and replaced the actuators on an RC MOWERS Model TK-52XT mower, serial number 14029, as instructed by RC MOWERS.

25. Following the replacement of the actuators, RC MOWERS' service update instructed dealers to calibrate the KAR-TECH actuators.

26. RC MOWERS provided an interface with which to perform the calibration in connection with the service update.

27. On August 13, 2020, Leon Wolt utilized the interface and process provided by RC MOWERS' service update, which, upon completion, reflected that the actuators were properly calibrated and installed for the operation of the mower through the use of the KAR-TECH transmitter.

28. In attempting to operate the mower with the KAR-TECH transmitter, however, the mower did not move.

29. Leon Wolt used the KAR-TECH transmitter to return the actuators to a position that read as neutral to prevent movement of the mower and approached the mower to release the manual parking brake, originally installed by GRAVELY.

30. Upon releasing the manual parking brake, the mower immediately began travel, struck Mr. Wolt and knocked him to the ground, drove over him, and became lodged against a wall.

31. Following the incident, RC MOWERS' designed and manufactured its second generation remote controlled zero-turn mowers with parking brake that can be released remotely using the transmitter and KAR-TECH designed and manufactured an accompanying transmitter equipped with a "mercury switch" that disables the engine in the event the operator is struck and is knocked to the ground holding the transmitter.

32. As a result of the incident, and as a proximate cause of Defendants' conduct described above and more fully below, Mr. Wolt suffered numerous fractures to his lower extremities, and consequently, permanent injuries and impairments and Plaintiffs' damages, as described herein.

V. **CAUSE OF ACTION AGAINST DEFENDANT EMBANKSCAPE EQUIPMENT, LLC D/B/A RC MOWERS: STRICT PRODUCTS LIABILITY—DESIGN DEFECT**

33. Defendant RC MOWERS designed, manufactured and marketed a remote controlled zero-turn mower and distributed the mower into the stream of commerce.

34. RC MOWERS intended and expected that the mower so introduced and passed on in the course of trade would ultimately reach dealers and consumers or users in the condition in which it was originally sold.

35. Plaintiffs allege that at the time of the incident, said mower was being used for the purpose for which it was intended by Defendant RC MOWERS and the use of this product caused Plaintiffs' injuries and damages as alleged further herein.

36. That is, the mower was unreasonably dangerous because it was defectively designed in that Defendant RC MOWERS' design relied upon and utilized the existing, manually operated parking brake and failed to incorporate a remotely operated parking brake.

37. Furthermore, the RC MOWERS' mower is defectively designed and, in the alternative, defectively manufactured, in that the actuators and controller failed to properly reflect alignment, informing the operator that the mower is in neutral when it is not.

38. Furthermore, the RC MOWERS' mower is defectively designed in that the transmitter accompanying the mower failed to incorporate a "mercury switch" in the event the mower struck the operator.

39. Thus, the mower was unsuitable for the purpose for which it was marketed and sold.

40. A safer alternative design, i.e., the installation of a remote controlled parking brake, would have prevented or significantly reduced the risk of the injuries in question without substantially impairing the product's utility, and was technologically and economically feasible at the time Defendant RC MOWERS designed, manufactured, marketed and sold the mower at issue.

41. Defendant's defective design of the mower was a producing cause of the Plaintiffs' injuries and damages, which are more fully set forth below.

42. Plaintiffs therefore invoke the Doctrine of Strict Liability in RESTATEMENT (SECOND) OF TORTS, §402A, and as adopted by the Supreme Court of Texas.

43. In considering the actions and omissions that caused these damages, Defendant exhibited conscious disregard for the rights and safety of others. Accordingly, Plaintiffs seek recovery of exemplary damages.

## VI. CAUSE OF ACTION AGAINST DEFENDANT EMBANKSCAPE EQUIPMENT, LLC, D/B/A RC MOWERS USA: STRICT PRODUCTS LIABILITY—MARKETING DEFECT

44. Defendant RC MOWERS designed, manufactured and marketed a remote controlled mower and distributed the remote controlled mower into the stream of commerce.

45. RC MOWERS intended and expected that the remote controlled mower so introduced and passed on in the course of trade would reach product dealers and their employees and ultimately reach a consumer or user in the condition in which it was originally sold.

46. Plaintiff alleges that at the time of the incident, said remote controlled mower was being used for the purpose for which it was intended, and pursuant to the instructions and directives of RC MOWERS, and the use of this product caused Plaintiff's injuries and damages as alleged further herein.

47. That is, the remote controlled mower was unreasonably dangerous because it was defectively marketed in that Defendant RC MOWERS failed to provide any warning concerning the release or operation of the parking brake or that the remote controlled mower interface and transmitter may falsely indicate that the mower is in neutral.

48. Moreover, the remote controlled mower was further unreasonably dangerous because it was defectively marketed in that Defendant RC MOWERS failed to provide any warnings in its "service update" on the release or operation of the parking brake or false readings from the transmitter indicating that the mower is in neutral.

49. Thus, the remote controlled mower was unsuitable for the purpose for which it was designed, manufactured, marketed and sold.

50. Plaintiffs further allege that the mower was defective and unsafe for its intended purpose at the time it left control of RC MOWERS and at the time it was sold.

51. Defendant's defective marketing of the remote controlled mower was a producing cause of the Plaintiffs' injuries and damages, which are more fully set forth below. Plaintiffs therefore invokes the Doctrine of Strict Liability in RESTATEMENT (SECOND) OF TORTS, §402A, and as adopted by the Supreme Court of Texas.

52. In considering the actions and omissions that caused these damages, Defendant exhibited conscious disregard for the rights and safety of others. Accordingly, Plaintiffs seek recovery of exemplary damages.

## VII. NEGLIGENCE AND GROSS NEGLIGENCE OF EMBANKSCAPE EQUIPMENT, LLC D/B/A RC MOWERS

53. Defendant RC MOWERS was negligent in the design, manufacture, inspection and testing of the product at issue.

54. Defendant RC MOWERS knew, or should have known through the exercise of ordinary care, that the product at issue was defective and unreasonably dangerous for the purpose and manner for which it was intended to be used.

55. Defendant RC MOWERS owed Plaintiffs the duty of reasonable care when it designed, manufactured, inspected, and tested the product in question.

56. Defendant RC MOWERS violated its duty to Plaintiffs in one or more of the following ways:

   a. Negligently designing the subject remote controlled mower;
   b. Negligently manufacturing the subject remote controlled mower;
   c. Negligently testing the subject remote controlled mower;
   d. Negligently inspecting or negligently failing to inspect the subject remote controlled mower.

57. Each and all of the above and foregoing, whether of commission or omission, constitute negligence as defined by law, and are, each and all, separately and concurrently, a proximate cause of the incident described above and the resulting injuries and damages sustained by Plaintiffs.

## VIII. CAUSE OF ACTION AGAINST DEFENDANTS KAR-TECH, INC. AND KAR-TECH GLOBAL, INC.: STRICT PRODUCTS LIABILITY—DESIGN DEFECT

58. Defendants Kar-Tech, Inc. and/or Kar-Tech Global, Inc. designed, manufactured and marketed a remote transmitter and actuators for use in the RC MOWERS' zero-turn mower and distributed the transmitter and actuators in the stream of commerce.

59. Kar-Tech, Inc. and/or Kar-Tech Global, Inc. intended and expected that the transmitter and actuators so introduced and passed on in the course of trade would ultimately reach dealers and consumers or users in the condition in which it they were originally sold.

60. Plaintiffs allege that at the time of the incident, said transmitter and actuators were being used for the purpose for which they were intended by Defendant Kar-Tech, Inc. and/or Kar-Tech Global, Inc. and the use of this product caused Plaintiffs' injuries and damages as alleged further herein.

61. That is, the Kar-Tech, Inc. and/or Kar-Tech Global, Inc. transmitter and actuators are defectively designed and, in the alternative, manufactured, in that the actuators and transmitter fail to properly reflect alignment, informing the operator that the mower is in neutral when it is not.

62. Furthermore, the transmitter is defectively designed in that it failed to incorporate a "mercury switch" which disables the mower in the event that the operator is struck and knocked to the ground.

63. Thus, the transmitter and actuators were unsuitable for the purpose for which they were marketed and sold.

64. A safer alternative design, i.e., the installation of a mercury switch, would have prevented or significantly reduced the risk of the injuries in question without substantially impairing the product's utility, was technologically and economically feasible at the time

Defendant Kar-Tech, Inc. and/or Kar-Tech Global, Inc. designed, manufactured, marketed and sold the products at issue.

65. Defendant's defective design of the transmitter and actuators were a producing cause of the Plaintiffs' injuries and damages, which are more fully set forth below. Plaintiffs therefore invoke the Doctrine of Strict Liability in RESTATEMENT (SECOND) OF TORTS, §402A, and as adopted by the Supreme Court of Texas.

**66.** In considering the actions and omissions that caused these damages, Defendant exhibited conscious disregard for the rights and safety of others. Accordingly, Plaintiffs seek recovery of exemplary damages.

### IX. <u>NEGLIGENCE AND GROSS NEGLIGENCE OF KAR-TECH, INC. AND KAR-TECH GLOBAL, INC.</u>

67. Defendants KAR-TECH were negligent in the design, manufacture, inspection and testing of the product at issue.

68. Defendants KAR-TECH knew, or should have known through the exercise of ordinary care, that the product at issue was defective and unreasonably dangerous for the purpose and manner for which it was intended to be used.

69. Defendants KAR-TECH owed Plaintiffs the duty of reasonable care when it designed, manufactured, inspected, and tested the product in question.

70. Defendants KAR-TECH violated its duty to Plaintiffs in one or more of the following ways:

    a. Negligently designing the subject transmitter and actuators;

    b. Negligently manufacturing the subject transmitter and actuators;

    c. Negligently testing the subject transmitter and actuators;

      d. Negligently inspecting or negligently failing to inspect the subject transmitter and actuators.

71. Each and all of the above and foregoing, whether of commission or omission, constitute negligence as defined by law, and are, each and all, separately and concurrently, a proximate cause of the incident described above and the resulting injuries and damages sustained by Plaintiffs.

## X. NEGLIGENCE AND GROSS NEGLIGENCE OF ARIENS COMPANY, D/B/A GRAVELY

72. Defendant GRAVELY had a duty to exercise reasonable care in the sale of its products to intermediaries intent on altering its products in a fashion that rendered them unsafe for users.

73. Defendant GRAVELY knew, or should have known through the exercise of ordinary care, prior to the purchase and sale of the subject GRAVELY manually operated Pro-Turn 250 Series zero-turn mower that RC MOWERS had altered, or intended to alter, its products in a fashion that rendered them unsafe and unfit for their intended purpose.

74. Defendant GRAVELY recklessly failed to exercise reasonable care regarding this duty by selling the subject GRAVELY manually operated Pro-Turn 250 Series zero-turn mower despite its actual or constructive knowledge of RC MOWER's unsafe design and alterations of the product.

75. In the alternative, Defendant GRAVELY recklessly violated its duty of care by failing to conduct any investigation, inspection, or inquiry into the design alterations made by, or to be made by, RC MOWERS, prior to the sale of the subject GRAVELY manually operated Pro-Turn 250 Series zero-turn mower.

76. These actions and omissions constituted a breach of Defendant GRAVELY's duty and proximately caused Plaintiffs' injuries and damages, as complained of herein.

## XI.  DAMAGES

77. Plaintiff LEON WOLT alleges that as a direct and proximate result of the conduct of Defendants, as alleged above, he sustained serious and permanent bodily injuries, including but not limited multiple, complicated fractures to his lower extremities. As a result of these injuries, Plaintiff LEON WOLT, has suffered the following damages, amounting to more than $75,000.00:

   a. Medical expenses paid and/or incurred in the past and that will, in likelihood, be paid and/or incurred in the future;

   b. Lost wages and loss of earning capacity in the past and that will, in likelihood, be lost in the future;

   c. Physical pain and mental anguish in the past and future;

   d. Physical impairment in the past and future; and

   e. Disfigurement in the past and future.

78. Plaintiff LEON WOLT sues for damages to fairly, reasonably, and adequately compensate him for said injuries and losses, all in an amount in excess of the minimum jurisdictional limits of this Court.

79. Plaintiff DEBRA WOLT is the wife of LEON WOLT. Prior to the incident made the basis of this suit, Plaintiffs enjoyed a loving relationship, sharing the mutual affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, and felicity of a successful marriage. As a proximate cause of Defendants' conduct, as alleged above, and resulting injuries to LEON WOLT, that relationship has been damaged and DEBRA WOLT has sustained a loss of consortium and in reasonable probability will suffer such in the foreseeable future.

Additionally, DEBRA WOLT has suffered a loss of LEON WOLT's household and domestic services in the past and, in all likelihood, will continue suffering losses of household and domestic services in the future.

80. Plaintiffs seek pre-judgment and post-judgment interest at the maximum amount for the maximum period allowed by law

## XII. GROSS NEGLIGENCE

Defendants' negligence/negligence *per se*, as alleged herein, is of such character as to make said Defendants liable for gross negligence. The conduct of said Defendants was in heedless and reckless disregard of the rights of Plaintiffs, and involved such an entire want of care as to indicate that it was a result of conscious indifference to the rights, welfare and safety of Plaintiffs. Moreover, such conduct, when viewed objectively from said Defendants' standpoint at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Plaintiffs seek exemplary damages in such an amount as may be found to be proper under the facts and circumstances.

## XIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray that Defendants be cited to appear and answer and that upon final trial of this cause Plaintiffs recover as follows:

  a. Judgment against Defendants for Plaintiffs' actual damages as set forth above, in an amount in excess of the minimum jurisdictional limits of this Court;
  b. Exemplary damages;
  c. Pre-judgment and post-judgment interest at the maximum rate allowed by law;
  d. Costs of Court; and
  e. All other and further relief to which Intervenor may be entitled.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY**

Respectfully submitted,

SLOAN, HATCHER, PERRY, RUNGE, ROBERTSON & SMITH LAW FIRM

*/s/ Justin A. Smith*
JUSTIN A. SMITH
State Bar No. 24068415
jsmith@sloanfirm.com
J. KENDON WOMACK
State Bar No. 24117620
kwomack@sloanfirm.com
Post Office Box 2909
Longview, Texas 75606
101 E. Whaley Street
Longview, Texas 75601
Phone: (903) 757-7000
Fax:    (903) 757-7574

ATTORNEY FOR PLAINTIFFS LEON AND DEBRA WOLT