United States District Court
Southern District of Texas
**ENTERED**
September 03, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Leon Wolt and Debra Wolt, | § | |
|  | § | |
| *Plaintiffs*, | § | |
|  | § | Civil Action No. 4:22-cv-02503 |
| v. | § | |
|  | § | |
| Embankscape Equipment, LLC d/b/a RC Mowers USA; Kar-Tech, Inc.; and Kar-Tech Global, Inc., | § | |
|  | § | |
|  | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER

The parties filed multiple motions to exclude certain expert witnesses. One of them, filed by Plaintiffs Leon and Debra Wolt, challenges an expert retained by Defendants Kar-Tech, Inc. and Kar-Tech Global, Inc. *See* Dkt. 91 (Plaintiffs' motion to exclude Daniel Kingsley, Ph.D., P.E.). That motion is denied as moot in light of those parties' announcement of settlement. Dkt. 133 (notice of settlement between Plaintiffs and Kar-Tech defendants).

Two other motions, however, remain live. Plaintiffs have moved to exclude the opinions of Thomas Penshorn, an engineer retained by Defendant Embankscape Equipment, LLC d/b/a RC Mowers USA ("RC Mowers"). Dkt. 102. RC Mowers, for its part, filed a request for leave to adopt Kar-Tech's motion to exclude Plaintiffs' expert Keith Griffin. *See* Dkt. 101 (Kar-Tech's

motion to exclude); Dkt. 112 (RC Mowers' motion to adopt).  RC Mowers's request for leave (Dkt. 112), which Plaintiffs do not oppose, is granted.

After carefully considering the remaining motions to exclude, the responses, Dkt. 116, 120, the reply brief, Dkt. 123, the record, and the applicable law, the Court denies RC Mowers' request to exclude Plaintiffs' expert and grants in part Plaintiffs' request to exclude RC Mowers' expert.

## <u>Background</u>

This is a products liability suit.  Plaintiff Leon Wolt ("Wolt"), a technician employed by Kinloch Equipment & Supply, was injured when a remote-control lawnmower activated, began to travel, and struck him.  *See* Dkt. 1 at 5-6.  The mower was originally manufactured by Ariens Company, d/b/a Gravely, to be manually operated.  *See id.* at 3-4.  But after acquiring the mower from Ariens RC Mowers redesigned, made, and sold it as a remote-controlled mower.  *See id.* at 3.  The mower's transmitter was designed, marketed, and sold by Kar-Tech.  *See id.* at 4.

Wolt had been tasked with performing a service update issued by RC Mowers.  *See id*. at 5.  The update directed Kinloch to remove and replace the actuators and then recalibrate them.  *See id.*  Wolt completed that process.  *See id.*  The next day, Wolt confirmed that the actuators had been properly calibrated, but the mower did not move when he attempted to operate it with the transmitter.  *See id.*  Using the transmitter, Wolt put the actuators

in a neutral position and approached the mower to manually release its parking brake. *See id.* Upon releasing the brake, the mower spontaneously began to move, struck Wolt, and knocked him over, causing various injuries. *See id.* at 5-6. Wolt maintains that the injuries caused permanent impairments. *See id.* at 6.

Wolt and his wife filed this suit, asserting design defect, marketing defect, and negligence claims against RC Mowers, and design defect and negligence claims against Kar-Tech. *See id.* at 6-12.[1] After discovery closed, Plaintiffs filed two motions to exclude defendants' experts. One of the motions targets Daniel Kingsley, who is Kar-Tech's expert. *See* Dkt. 91. Another motion challenges RC Mowers's engineering expert, Thomas Penshorn. Dkt. 102. RC Mowers responded to that motion, Dkt. 116, and Plaintiffs replied, Dkt. 123. Kar-Tech also filed a motion to exclude Plaintiffs' expert Keith Griffin, Dkt. 101, which RC Mowers has sought leave to adopt, Dkt. 112. Plaintiffs responded to Kar-Tech's motion. Dkt. 120.

A June 12, 2025 filing reflects that Plaintiffs settled their claims against the Kar-Tech entities. *See* Dkt. 133. The settlement does not affect Plaintiffs' and RC Mowers's arguments for excluding each other's experts, which are ripe for resolution.

---

[1] Plaintiffs also sued Ariens, but those claims settled early in the case.

3

## Legal Standard

Under Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert

> by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert's testimony must show, by a preponderance of the evidence, that these requirements are met. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

"The object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re Taxotere Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). To fulfill its gatekeeping function, the district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). This evaluation applies to all

types of expert testimony.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  District courts enjoy "broad discretion" when performing their gate-keeping role of determining whether expert opinions are admissible.  *See Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013).

"To establish reliability under *Daubert*, an expert bears the burden of furnishing 'some objective, independent validation of [his] methodology.'" *Texokan Operating, Inc. v. Hess Corp.*, 89 F. Supp. 3d 903, 909 (S.D. Tex. 2015) (quoting *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).  On the one hand, "[t]he *Daubert* [inquiry] should not supplant trial on the merits." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

On the other hand, courts should not admit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see Ellis v. U.S.*, 673 F.3d 367, 373 (5th Cir. 2012).  Expert opinions that are fundamentally unsupported provide no assistance to the jury and should be excluded.  *Texokan*, 89 F. Supp. 3d at 909 (citing *Guile v. U.S.*, 422 F.3d 221, 227 (5th Cir. 2005)).

## Analysis

### I.    RC Mowers's motion to exclude Keith Griffin's opinions is denied.

RC Mowers filed an unopposed motion for leave to adopt, by reference, Kar-Tech's motion (Dkt. 101) to exclude the opinions of Keith Griffin, an economist who projected the amount of Wolt's lost wages.  *See* Dkt. 112.  RC Mowers's request for leave is granted.  The remainder of this opinion will refer to RC Mowers as the movant seeking exclusion of Griffin's opinions.

According to the motion, Griffin's accounting background does not qualify him to offer opinions about Wolt's ability to work.  *See* Dkt. 101 at 3-4. The motion further asserts that Griffin proffers no factual basis indicating that Wolt would stop working in 2026.  *See id.* at 4-5.  Plaintiffs, however, explain that RC Mowers misconstrues Griffin's opinions.  *See generally* Dkt. 120 at 4-6.  The Court agrees with Plaintiffs.

Contrary to RC Mowers's position, Griffin *does not opine* that Wolt would, in fact, be unable to work at any point in time.  *See* Dkt. 120 at 5. Instead, Griffin merely applied his expertise to quantify what Wolt's lost wages would be, on a yearly basis, and taking inflation into account, over a range of time.  *See* Dkt. 101 at 10; *see also* Dkt. 120-4 at 9.  Naturally, those calculations must have a start and end date, just as Griffin's table reflects.  *See* Dkt. 101 at 10.  But as Plaintiffs note, it will be for the jury to determine—based on *other*

evidence—whether Wolt's injuries from the accident will render him unable to work, and if yes, on what date that will occur, and what sum of lost wages (if any) to award. *See* Dkt. 120 at 5-6. There is nothing objectionable about Griffin's approach.

Notably, RC Mowers does not take issue with Griffin's calculations themselves, which Griffin's background qualifies him to perform. Because RC Mowers's objection attacks opinions that Griffin does not purport to provide, its request to exclude Griffin's testimony is denied.

## II. Plaintiff's motion to exclude Thomas W. Penshorn is granted in part and denied in part.

RC Mowers retained Thomas W. Penshorn, a licensed professional engineer, to provide opinions "regarding the adequacy of the Mower's design, manufacture, marketing and other procedures related to" the mower's operation. Dkt. 31 at 2; *see also* Dkt. 102-1 at 5 (Penshorn's expert report). Because the parties did not submit Penshorn's deposition, nor seek to supplement the record, the only explanations for those opinions are found in his expert report. The opinions themselves consist of fourteen bullets that can be grouped in three categories. *See id.* at 6-7.

The largest category includes Penshorn's opinions that Wolt failed to read and follow RC Mowers's instructions and warnings, and the accident would not have happened had he adhered to the instructions. These opinions

are listed in bullets one, four, five, six, thirteen, and fourteen. *See id.* Relatedly, Penshorn opines (bullet seven) that Wolt's failure to adhere to the instructions and service procedures was not reasonably foreseeable. *See id.* This opinion is included among Penshorn's opinions rebutting Plaintiffs' expert, ArcFX, but it is intertwined with his opinions that Wolt failed to follow the instructions and warnings. *See id.* at 37-38.

Another category addresses three broader opinions related to warnings and instructions. Penshorn opines that (1) RC Mowers "provided reasonable instructions and warnings to operators, users, and service providers for [the mower's] safe use" (bullet three); and (2) "Service Procedure SP111 was an accompanying reference to the [mower's] Manual and not intended or suggested to be a standalone manual" (bullet two). *Id.* at 6. Penshorn also offers an interrelated opinion—premised on RC Mowers's allegedly adequate warnings and instructions—that "[t]he Mower was reasonably safe for its intended and reasonably foreseeable usage by intended persons as designed." *Id.* at 7 (bullet twelve).

A final category of opinions rebuts the proposed alternative design proffered by Plaintiffs' expert, ArcFX. *See id.* at 6-7. In bullets eight, nine, ten, and eleven, Penshorn opines there is no evidence that ArcFX's proposed alternative design, which included an interlocking parking brake actuation with the mower's ignition, would have prevented the accident. *See id.*

8

Plaintiffs globally challenge all of Penshorn's opinions. As detailed below, most—but not all—of Plaintiffs' objections are sustained.

## A. Penshorn's opinions targeting Wolt's failure to follow instructions and warnings are unhelpful to the jury.

Regarding the first category detailed above, Plaintiffs maintain that Penshorn's opinions about Wolt's failure to review and adhere to instructions and warnings and the attendant consequences should be excluded. *See* Dkt. 102 at 5-8; Dkt. 102-1 at 6-7. Those opinions, argue Plaintiffs, present nothing helpful to the trier of fact. *See* Dkt. 102 at 8. RC Mowers responds that Penshorn based those opinions on his "specialized knowledge and experience," rendering the opinions helpful to the jury. *See* Dkt. 116 at 14-16. Plaintiffs have the better of the argument.

In his report, Penshorn recited certain warnings and instructions, cited surveillance footage and Wolt's deposition, and declared certain conclusions that require no technical expertise to reach:

| Evidence | Opinion |
|---|---|
| The manual says users must read the manual. *See* Dkt. 102-1 at 28. Wolt testified that he did not read the manual. *See id.* at 19-20. | Wolt "failed to adhere to manufacturer's instructions" by failing to "[r]ead the Manual" before operating the mower. Dkt. 102-1 at 36. |
| The manual warns to either "[c]hock" or block the tracks or "[s]trap and clamp" the mower onto | Wolt "failed to adhere to manufacturer's instructions" by failing to "[c]hock the tracks and/or place the Mower on a lift or jack |

| | |
|---|---|
| a lift while servicing it.[2] Dkt. 102-1 at 32. The video shows that Wolt did not chock/block the tracks or put the mower on a lift or jack during servicing. *See id.* at 16-18 (screenshots from video). | stands for servicing." Dkt. 102-1 at 36. |
| The manual instructs users to disengage the parking brake before starting the mower. *See* Dkt. 102-1 at 31-32. Wolt's testimony and the video showed that he did not do that; instead, he started the mower before disengaging the brake. *See id.* at 15. | Wolt "failed to adhere to manufacturer's instructions" by failing to "[d]isengage the Brake prior to starting the Mower using the remote controller." Dkt. 102-1 at 36. |
| The manual warns users to ensure that the engine is off before approaching the mower. Dkt. 102-1 at 29. The mower also has a decal warning never to stand behind it while operating the machine. *Id.* at 27. Wolt's testimony and the video reflect that he energized the mower before walking toward and standing behind it. *See id.* at 15. | Wolt "failed to adhere to manufacturer's instructions" by failing to "[t]urn off the Mower using the remote controller prior to approaching the Mower." Dkt. 102-1 at 36. |
| The manual cautioned that an operator should stand "at least 30 feet away" when starting and operating the unit. Dkt. 102-1 at 30. Wolt was less than 30 feet away, standing behind the mower's left-rear, when he released the brake, the mower activated, and he was knocked to the ground. *Id.* at 15, 18. | Wolt "failed to adhere to manufacturer's instructions" by failing to "[m]aintain a 30-foot buffer from the running Mower in start-up and operation." Dkt. 102-1 at 36. |

---

[2] To "chock" the track means *i.e.*, to wedge the tracks to hold them motionless, *see* Chock, Merriam-Webster Online Dictionary, https://perma.cc/99VH-L53P.

As related, global conclusions, Penshorn declares

- (in bullet 13) that "[h]ad Mr. Wolt been out of the path of travel when performing his function check, the incident would not have occurred"; and

- (in bullet 14) that "[h]ad Mr. Wolt followed the warnings and instructions located on the Mower and in the Manual, the Incident would not have occurred."

Dkt. 102-1 at 7. Those observations are just as self-evident as the warning- or instruction-specific opinions listed above.

Penshorn's opinions that Wolt failed to follow the foregoing warnings and instructions, and could have avoided the accident had he heeded them, would add nothing to the jury's understanding of what happened. The foregoing warnings and instructions are straightforward. The jury is fully capable of reading them and ascertaining whether Wolt heeded them by reviewing the same evidence cited in Penshorn's report. Similarly, the jury can readily determine whether Wolt would have been struck by the mower had he followed the warnings and instructions.

Under Rule 702(a), Penshorn's opinions on those issues are properly excluded because they would not "help the trier of fact to understand the evidence or to determine a fact in issue ...." Fed. R. Evid. 702(a); *see also Crow v. United Benefit Life Ins. Co.*, 2001 WL 285231, at *3 (N.D. Tex. Mar. 16, 2001) (expert testimony on issues that "a jury is capable of assessing for itself" is properly excluded as unhelpful) (quoting *Thompson v. State Farm Fire & Cas.*

*Co.*, 34 F.3d 932, 941 (10th Cir. 1994)); *see also, e.g.*, *J.S. v. Am. Inst. for Foreign Study, Inc.*, 2013 WL 5372531, at \*9 (W.D. Tex. Sept. 24, 2013) (expert's testimony that defendant failed to follow its own policies "would not assist the jury" because the jury is capable of reading the policies and "determining from the evidence" whether the defendant complied with them); *Salmon v. Waffle House, Inc.*, 2021 WL 1023066, at \*3 (E.D. La. Mar. 17, 2021) (expert opinion premised on watching a video and noting when the individual fell and where his hands were placed was obviously within the jurors' common knowledge).

Penshorn's insistence that he utilized his knowledge and experience to reach those conclusions alters nothing.  *See* Dkt. 116-1 ¶¶ 12, 16.  Subject to the caveat discussed in Part II.C, *infra*, Penshorn's opinions about Wolt's non-compliance with warnings and instructions and the consequences thereof (bullets 1, 4, 5, 6, 7, 13, and 14) are excluded.

## B.   Penshorn's other opinions about RC Mowers's warnings and instructions are inadmissible.

Plaintiffs also seek to exclude three other warnings-related opinions, two of which the Court listed above in category two and one other in category three. These challenges are well-taken.

12

1.   Penshorn's opinion that RC Mowers provided reasonable
     instructions and warnings

In his third bullet, Penshorn opines that "RC Mowers, as the manufacturer of the Mower, provided reasonable instructions and warnings to operators, users, and service providers for its safe use." Dkt. 102-1 at 6. Plaintiffs assert that Penshorn is unqualified to offer that opinion because he "has no expertise in the human factors aspects" of product-safety warnings. Dkt. 102 at 5; *see also* Dkt. 123 at 6.

Significantly, RC Mowers does not attempt to defend Penshorn's qualifications to offer the opinion disclosed in bullet three of his report. *See* Dkt. 116 at 11. Because RC Mowers bears the burden of proof on that issue, *see* Fed. R. Evid. 702, the Court deems that opinion to be abandoned.

Instead, RC Mowers attempts to recharacterize Penshorn's opinion as something else. *See* Dkt. 116 at 11. According to RC Mowers, Penshorn seeks to testify that the warnings "were reasonable *to allow Mr. Penshorn* to assess and determine the intended use of the Mower as designed by RC Mowers." *See id.* (emphasis added) (citing Dkt. 116-1 ¶ 10).

Plaintiffs complain that this is not a mere gloss or interpretation of Penshorn's prior opinion, and they are right. *See* Dkt. 123 at 2-3. What Penshorn proffers now is an entirely new and substantively different opinion that he had not properly disclosed. That alone justifies excluding Penshorn's

new opinion. *See ExxonMobil Glob. Servs. Co. v. Bragg Crane Serv.*, 2023 WL 6213438, at *2 (S.D. Tex. Sept. 25, 2023) (citing Fed. R. Civ. P. 26(a)(2)(B)(i); expert was only allowed to testify about opinions disclosed in the report).

The Court also agrees, as Plaintiffs maintain, that whether *Penshorn* was able to determine the mower's "intended use" by reviewing RC Mowers's instructions has no bearing on the claims in this case. Take the marketing defect claim. "[A] marketing defect occurs if a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use." *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 881 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 562 (Tex. App.—Houston [1st Dist.] 1995, no writ)). The adequacy of the warning is viewed from the *user's* standpoint and "is defined in terms of the likelihood of its being noticed and its ability to be understood and to convey a sufficient indication of the risks involved." *Daimlerchrysler Corp. v. Hillhouse*, 161 S.W.3d 541, 548 (Tex. App.—San Antonio 2005) (citing *Brown Forman Corp. v. Brune*, 893 S.W.2d 640, 644 (Tex. App.—Corpus Christi 1994, writ denied)), *pet. granted, vacated by agreement*, 2006 WL 8473582 (Tex. Jan. 13, 2006); *see also, e.g.*, *Gillis v. Cmty. Prods., LLC*, 2024 WL 4527324, at *4-5 (W.D. Tex. Aug. 28, 2024) (denying summary judgment on marketing defect

claim; users could interpret warnings different ways, and the jury could conclude that one warning was put in an inadequate location).

The relevant user here is Wolt. As Plaintiffs aptly note, whether an engineer like Penshorn found the warnings adequate does not inform whether Wolt, a non-engineer service technician, was adequately warned of hazards associated with the mower's intended or foreseeable use. *See* Dkt. 123 at 6.

Nor does Penshorn's new opinion fit the framework for design-defect claims. "To recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 82.005. Whether a product is unreasonably dangerous requires a risk-utility analysis that considers

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, *or of the existence of suitable warnings or instructions*; and (5) the expectations of the ordinary consumer.

*Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999) (emphasis added) (quoting *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997)).

The reference to warnings and instructions is only a small piece of the risk-utility inquiry. Indeed, "the fact that a product user is or should be aware of the existence and avoidability of dangers that are obvious, commonly known, *or warned against*, in general, this fact 'in and of itself is not an absolute bar ... to liability for a defective design.'" *Erwin v. Metalcraft of Mayville, Inc.*, 2025 WL 1146639, at *15 (N.D. Tex. Mar. 20, 2025) (emphasis added) (quoting *Hernandez*, 2 S.W.3d at 258; citing *Timpte Indus., Inc.*, 286 S.W.3d at 312, and *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998)), *adopted by* 2025 WL 1334064 (N.D. Tex. May 7, 2025). Penshorn's personal ability to understand the mower's instructions and its intended use does not supplant the risk-utility factors.

Because Penshorn's new opinion does not engage the standards for marketing and design-defect claims, its likelihood of confusing the jury significantly outweighs its probative value, even if it had been properly and timely disclosed. *See* Fed. R. Evid. 403. Penshorn's disclosed opinion (bullet three)—which he and RC Mowers have abandoned—and his new, undisclosed opinion are excluded.

2.     Penshorn's opinion that the "Service Procedure SP111" was not a standalone manual

Penshorn also opined that "Service Procedure SP111 was an accompanying reference to the [mower's] Manual and not intended or suggested to be a standalone manual." Dkt. 102-1 at 6 (bullet two). Plaintiffs contend that Penshorn offers nothing supporting this conclusion. *See* Dkt. 102 at 6. This is true; Penshorn's report declares this opinion without citing facts or supplying any analysis. *See* Dkt. 116-3 at 37.

In response, RC Mowers cites Penshorn's supplemental affidavit, touting his own experience and knowledge. *See* Dkt. 116 at 22 (citing Dkt. 116-1 ¶¶ 9, 12, 13). That incantation does not explain *how* or *why* Penshorn's engineering experience and training led him to conclude that the SP111 was meant to be read alongside the mower's manual. Absent such an explanation, his opinions are inadmissible *ipse dixit*. *See Joiner*, 522 U.S. at 146 (endorsing exclusion of expert opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert"); *see also, e.g.*, *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, 2019 WL 1436659, at *27 (N.D. Tex. Mar. 31, 2019) (expert's failure to provide an analogous explanation rendered his opinions "nothing more than *ipse dixit*"). Penshorn's opinion in bullet two is excluded.

3.     <u>Penshorn's interrelated opinion that the mower "was reasonably safe for its intended and reasonably foreseeable usage by intended persons as designed"</u>

The foregoing conclusions also warrant excluding Penshorn's related opinion (bullet twelve) that the mower "was reasonably safe for its intended and reasonably foreseeable usage by intended persons as designed." Dkt. 102-1 at 40; *see also id.* at 7.  RC Mowers acknowledges that this opinion is premised on opinions that this Court has deemed inadmissible. *See* Dkt. 116 at 27-28 (explaining that Penshorn reached the opinion based on the other opinions addressed above).  Excluding those other opinions leaves no reliable basis for Penshorn's opinion in bullet twelve.  It is therefore excluded.

## C.    Penshorn may rebut Plaintiffs' proposed reasonable alternative design.

But the inadmissibility of Penshorn's warnings-related opinions does not entirely foreclose his testimony at trial, as Plaintiffs have assumed.  In bullets eight, nine, ten, and eleven, Penshorn disclosed several opinions that rebut the opinions of Plaintiffs' expert, ArcFX, with respect to whether the accident was foreseeable and whether there is a reasonable alternative design for the mower.  *See* Dkt. 102-1 at 6-7, 37-40.

Plaintiffs do not address those four opinions directly.  To be sure, those four opinions overlap with Penshorn's opinions excluded above, as Penshorn maintains that Wolt's failure to read the instructions refutes ArcFX's

assumption that an alternative design would have prevented the accident. *See* Dkt. 116-3 at 39-41. But Penshorn should not be precluded from articulating these other rebuttal opinions just because they rely on facts that the jury will determine whether to credit (or not).[3] Thus, to the extent that Penshorn seeks to explain the flaws in ArcFX's opinions, his testimony is admissible.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Defendant Embankscape Equipment, LLC d/b/a RC Mowers USA's motion for leave (Dkt. 112) to adopt Defendant Kar-Tech, Inc.'s motion to exclude expert Keith Griffin is **GRANTED**, but the motion to exclude Griffin's testimony (Dkt. 101) is **DENIED**.

It is further **ORDERED** that Plaintiffs' motion to exclude the testimony of Thomas Penshorn, PE (Dkt. 102) is **GRANTED IN PART** and **DENIED IN PART**. Penshorn is barred from offering his opinions in bullets one through seven and twelve through fourteen of his expert report (Dkt. 102-1 at 6-7).

---

[3] Put another way, much like the jury will determine whether the accident will render Wolt unable to work at some point in the future, *see supra* Part I, the jury will also resolve whether Wolt read and complied with instructions about the mower's proper use. Those respective determinations will dictate what weight, if any, the jury decides to give to Griffin's lost wages opinion and Penshorn's alternative-design rebuttal opinions.

Penshorn may, however, offer his opinions in bullets eight, nine, ten, and eleven that rebut Plaintiffs' proposed alternative design.

It is further **ORDERED** that Plaintiffs' motion to exclude the testimony of Daniel Kingsley, Ph.D., PE (Dkt. 91) is **DENIED** as moot.

Signed on September 3, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge